YORK v. ST. LOUIS, IRON MOUNTAIN & SOUTHERN RY CO.

Opinion delivered May 4, 1908.

1. MASTER AND SERVANT—CONTRIBUTORY NEGLIGENCE QUESTION FOR JURY.—
Where a brakeman in the discharge of his duties was sent between two freight cars to uncouple them, and after doing so got his foot caught in an unblocked frog and was killed, the question whether he was guilty of contributory negligence in going between the cars to uncouple them should have been submitted to the jury. (Page 246.)

2. SAME—UNBLOCKED FROG AN ASSUMED RISK.—An experienced brakeman is held to have assumed the risk from the use of unblocked frogs. *Choctaw, O. & G. Rd. Co.* v. *Thompson,* 82 Ark. 11, followed. (Page 246.)

3. SAME—PROXIMATE CAUSE.—Where a brakeman, in the performance of his duties, went between two freight cars in order to uncouple them, and his death resulted from his failure to extricate himself from that dangerous position, it matters not whether an unblocked frog, a hole or rock caused him to fall, as the default of the master in failing to equip the cars with automatic couplers was the proximate cause of his injury. (Page 247.)

Appeal from Miller Circuit Court; *Jacob M. Carter,* judge; reversed.

*William H. Arnold,* for appellant.

1. The safety appliance act applies in this case. U. S. Stat. at L. 531, act Cong. March 2, 1893, § § 2, 6, 8. Deceased did not assume the risk in going between the cars to make the coupling, and in doing so he was not guilty of negligence. 116 Fed. 867 *et seq.;* 205 U. S. 1 *et seq.;* 96 Fed. 298; 138 Ala. 487.

2. Not only was it not negligence *per se* to go in between the cars to make the coupling, but it was a question for the jury, under the facts and circumstances shown in evidence, to say whether or not appellant was guilty of contributory negligence. 82 Ark. 11.

3. There was ample evidence to show that it was negligence on the part of appellee to maintain unblocked frogs, and no sufficient evidence that deceased assumed the risk thereof.

*T. M. Mehaffy* and *J. E. Williams,* for appellee.

1. All the testimony, as well as the physical facts, show that deceased was on the outside of the rail at the time of the injury. If the coupler was defective, it was not the proximate cause of the injury.

2. Appellee used no other kind than the unblocked frog, which was, or should have been, known to deceased. He plainly assumed the risk of stepping into an unblocked frog when he entered the service. Cooley on Torts, Lewis Ed., 529; 54 Ark. 389; 82 Ark. 14.

HILL, C. J. J. C. York, a brakeman in the employ of the appellant railroad company, while in the performance of his duties on a freight train running from Memphis, Tennessee, to Wynne, Arkansas, and beyond, met his death while switching cars at Wynne. This is an action by the administrator to recover damages therefor; and at the conclusion of the trial the court directed a verdict for the defendant railroad company, and the administrator has appealed. These facts were developed:

York was sent to uncouple some cars which were making a flying switch, and the lever which worked the coupling from the outside of the cars was out of order and did not work, and he went between the cars to lift the pin with his hand, or else to reach across and get the lever on the other side (the witnesses differ as to which method he adopted). In some way he got the cars uncoupled while in between them, and while recovering his position outside of the cars he got his foot caught in an unblocked frog and was run over, death resulting from his injuries. The record is in some confusion as to exactly where he was when he was caught, but a jury could have found these facts: When the cars parted, York walked along holding to the car, going along with it (the car was moving slowly); and while so doing his foot was caught in the frog. He was walking backwards, with the motion of the car, when his foot caught in the frog, which was outside of the track that the car was moving upon. He had evidently got outside of that track; and, while it is not as clear as it should be, yet it may fairly be found that he was not clear of the cars, which extended beyond the tracks, when his foot was caught. It is inferred from the testimony that this frog was between the track upon which the car was moving and a track intersecting it, outside of the track upon which the car was moving. This would put York still between the cars, although outside of the track upon which the cars were moving, when his foot got caught. This view of the evidence harmonizes the apparently

inconsistent statements of the eye witnesses nearest to York when he was run over. These facts presented a question for the jury. They show a violation of the act of Congress of March 2, 1893, secs. 2 and 8 of which are as follows:

"Section 2. That on and after the first day of January, eighteen hundred and ninety-eight, it shall be unlawful for any such common carrier to haul or permit to be hauled or used on its line any car used in moving interstate traffic not equipped with couplers coupling automatically by impact, and which can be uncoupled without the necessity of men going in between the ends of the cars."

"Section 8. That any employee of any such common carrier who may be injured by any locomotive, car or train in use contrary to the provisions of this act shall not be deemed thereby to have assumed the risk thereby occasioned, although continuing in the employment of such carrier after the unlawful use of such locomotive, car or train had been brought to his knowledge."

The failure to have a coupling which met the requirements of this act necessitated York going between the cars to uncouple them if he obeyed orders to do so. Had the act of Congress been complied with, he would not have been required to have placed himself in this dangerous position in order to uncouple the cars. The act expressly provides that performing the work, notwithstanding the default of the company, should not be taken as an assumption of the risk. That being true, the question narrows to one of contributory negligence in going between the cars to uncouple them. The court cannot say as a matter of law that he was guilty of contributory negligence in doing so. *Choctaw, O. & G. Rd. Co.* v. *Thompson,* 82 Ark. 11; *Schlemmer* v. *Buffalo, Rochester & Pittsburg Ry. Co.,* 205 U. S. 1; *Kansas City, Memphis & Birmingham Rd. Co.* v. *Flippo,* 138 Ala. 487.

The cause of action can not be predicated upon the use of unblocked frogs. That matter has been thoroughly considered by this court in *Davis* v. *Railway,* 53 Ark. 117, and *Choctaw, O. & G. Rd. Co.* v. *Thompson,* 82 Ark. 11.

The proximate cause appears to have been the failure of the company to furnish a coupler which would enable the brake-

man to uncouple the cars without going between them. When he, in the performance of his duties, went between them, in order to uncouple them, and his death resulted from his failure to extricate himself from that dangerous position, it matters not whether an unblocked frog, a hole or rock, or some other obstruction, caused him to fall. The default was in the company failing to equip itself with appliances that would enable him to uncouple the cars without going between them. The court erred in directing a verdict for the defendant.

Reversed and remanded.

### OPINION ON REHEARING.

#### Opinion delivered May 23, 1908.

Hill, C. J.   1. Appellee questions the correctness of the facts stated in the opinion. The court found widely different conclusions drawn from the evidence by opposing counsel, and carefully read over, in consultation, more than once the evidence upon which the case turned, and the facts as stated in the opinion reflect the result of this careful investigation of the record.

2. It is argued that the court erred in declaring the defective coupling to be the proximate cause of the injury.

The loss of life and limb in coupling and uncoupling cars with link and pin, and other methods requiring brakemen to go between moving cars, became appalling, and the Safety Appliance Act, quoted in the opinion, represented an awakened national conscience on the subject. It was a recognition of the consequences to be expected to flow from coupling and uncoupling cars by going between them. The dangers incident to this service are common knowledge, and to remedy these dangers the act in question was passed, which intended to relieve brakemen of the necessity of performing these duties by going between the cars, and to require railroad companies engaged in interstate commerce to so equip their cars that this toll in life should not be taken for lack of safety appliances. To make the requirement effective, it was further provided that, should the company be in default in obeying the act, the brakeman

would not be held to have assumed the risk if he continued to perform his duties. If this provision had not been added, the act would have been wholly nugatory, for the brakeman would assume the risk whenever the company failed to equip itself as required by the act. This provision relieves the brakeman of the assumption of the risk so long as he is performing the duty required of him, but this will not relieve him of negligence in contributing to the injury nor permit him to unnecessarily prolong his stay between the cars. In other words, the act permits no dalliance with danger, but does permit him, without assuming the risk when the company is in default, to couple or uncouple cars by going between them, and an injury received while in the performance of this duty, either in the act of doing it or extricating himself, would be primarily due to the failure of the company to equip itself with automatic couplers, thus rendering necessary the brakeman's presence between moving cars.

"It is generally held that, in order to warrant a finding that negligence  *  *  *  is the proximate cause of an injury, it must appear that the injury was the natural and probable consequence of the negligence or wrongful act, and that it ought to have been foreseen in the light of the attending circumstances." *Milwaukee & St. P. Ry. Co.* v. *Kellogg,* 94 U. S. 469; *Scheffer* v. *Railroad Co.,* 105 U. S. 249; *St. Louis, I. M. & S. Ry. Co.* v. *Bragg,* 69 Ark. 402; *Ultima Thule, Arkadelphia & Miss. Rd. Co.* v. *Benton, post* 289.

Just such accidents as the one proved here are the natural and probable consequence of failing to provide automatic couplers, thereby forcing brakemen between moving cars in order to perform their duties.

3. It is urged that York was guilty of contributory negligence as a matter of law in walking backwards with the motion of the car. If York remained between the cars longer than was necessary for him to extricate himself after uncoupling them, he would certainly be guilty of contributory negligence and could not recover. But the court does not so understand the facts. Going backward with the motion of the car might, or might not, have been the best method to have escaped the moving

car from his position where he uncoupled. That is a question of fact.

The motion is denied.